UNITED STATES of America,
Plaintiff–Appellee,

v.

Quinton WILLIAMS, Defendant–
Appellant.

No. 03–10400.

D.C. No. CR–S–03–0046–KJD.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 14, 2004.

Decided Nov. 29, 2004.

Before OAKES,* KLEINFELD, and CALLAHAN, Circuit Judges.

KLEINFELD, Circuit Judge, dissenting.

MEMORANDUM **

Quinton Williams appeals his conviction after a jury trial for a variety of crimes relating to pimping, specifically transportation of a female for prostitution, trans-

---

* The Honorable James L. Oakes, Senior United States Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

portation of a minor for prostitution, money laundering, sex trafficking in children, and interstate travel in aid of racketeering. Williams argues that he was denied his Sixth Amendment right to confront a prosecution witness when she was deposed without his being present and the videotaped deposition was later used by the government at trial. Williams also argues that the district court erred in admitting at trial expert testimony concerning the relationship between prostitutes and their pimps, and further erred in admitting prejudicial evidence of uncharged acts.

█ The crux of Williams's Confrontation Clause claim is that he did not waive his right to be present at the deposition of Karmice Jackson when he failed to appear and was unavailable for teleconferencing. The district court found that Williams had waived his right to be present because he knew that a warrant was out for his arrest. We review this factual finding for clear error. *See United States v. Houtchens*, 926 F.2d 824, 826 (9th Cir.1991).

Williams's counsel had informed Williams of the arrest warrant the day before, at the same time he told him about Jackson's deposition. In that conversation with counsel, Williams did not express any desire to attend the deposition, nor indicate any concern about it, but instead was "excitable" at the news of his arrest warrant. Although it clearly would have been preferable to give Williams more than a day's notice of the deposition, the district court was acting in response to a Fed. R.Crim.P. 15(a) motion filed by Jackson that required the court to order her deposition and release. *See Torres–Ruiz v. United States District Court*, 120 F.3d 933, 935 (9th Cir.1997) (holding that when a detained witness moves for a deposition and makes the requisite showings, "the district court *must* order his deposition and prompt release") (emphasis in original; internal quotation omitted). Considering

the unlikelihood that Williams would appear even if the deposition was delayed, the unsuccessful attempt to teleconference with Williams, the presence of Williams's counsel at the deposition, and the necessity of avoiding delay in deposing Jackson, we hold that the district court did not clearly err in finding that Williams's failure to appear constituted a waiver of his right to be present.

In so holding, we are mindful that the Supreme Court recently "revisited its Confrontation Clause jurisprudence in *Crawford v. Washington*, 541– U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)." *United States v. Wilmore*, 381 F.3d 868, 871–72 (9th Cir.2004). In *Crawford*, the Court unequivocally stated that "[w]here testimonial evidence is at issue, … the Sixth Amendment demands what the common law requires: unavailability and a prior opportunity for cross-examination." 124 S.Ct at 1374. We find that the government satisfactorily established Jackson's unavailability at trial. We also find that Williams, through his counsel, had an adequate opportunity to cross-examine Jackson at her deposition. Williams argues that his personal knowledge of the facts was essential to effectively cross-examine Jackson. But Williams points to no facts that his counsel failed to bring out on cross-examination in Williams's absence. Indeed, Williams's counsel had Jackson's grand jury testimony in the case and was the same attorney who had been prepared for Williams's trial a few weeks early. Accordingly, we hold that Jackson's deposition satisfied the requirements of *Crawford* and that Williams's Confrontation Clause rights were not violated by its use at trial.

█ We review the district ruling's on the admissibility of Dr. Lee's expert testimony for abuse of discretion. *See United States v. Verduzco*, 373 F.3d 1022, 1032 n. 6 (9th Cir.2004). Dr. Lee's testimony was

admitted, after a hearing, to aid the jury in grasping the relationship between prostitutes and their primps. Dr. Lee did not testify as to Williams's case specifically, but instead testified generally on a matter deemed to be beyond the common knowledge of the jurors. Such testimony was found admissible in *United States v. Taylor*, 239 F.3d 994, 998 (9th Cir.2001); *see also United States v. Anderson*, 851 F.2d 384, 394 (D.C.Cir.1988). We therefore hold that the district court did not abuse its discretion in admitting Dr. Lee's testimony.

We have considered Williams's argument as to the alleged prejudicial admission of uncharged acts evidence and find it to be without merit. The judgment of the district court is therefore AFFIRMED.

KLEINFELD, Circuit Judge.

I respectfully dissent.

This was a case without witnesses. The prosecution did not present live testimony at trial from either of the two prostitute victims. Instead, they used a video deposition and a purported expert as substitutes.

The video tape deposition violated Williams's right to "confront[ ] ... the witnesses against him"[1] because he did not have the "opportunity for cross examination"[2] when the video deposition was taken. He did not waive his right to be present at the video deposition. Williams, an indigent residing in Chicago, was given one day's notice of a deposition in Las Vegas with no offer of the money to get there. One day, during the holidays when an airplane seat might not even be available, and without an offer of a fare, denied him a fair opportunity to confront the only percipient witness in the case.

Dr. Lee, purporting to be an expert on prostitutes and drawing inferences from such terms of endearment as "daddy" and "angel," essentially substituted as a witness for the underage prostitute whom Dr. Lee had never met. The relevance of her testimony was mostly for the credibility of the underage prostitute, but since the government did not put the underage prostitute on the stand, I cannot see much relevance. There was no predicate for Dr. Lee's testimony that an underage prostitute would probably testify falsely to protect her pimp where the underage prostitute did not testify at all. The prejudicial nature of her testimony, exemplified by her insinuation, based on her purported knowledge of other people, that Williams had his prostitutes pimp out their children for infant fellatio, outweighed whatever, if any, probative value her testimony may have possessed.

1. U.S. CONST. amend. VI.

2. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004).

